IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DWIGHT D. EBARB, CV. 06-6009 MO

Plaintiff, OPINION AND ORDER

v.

LINDA S. McMAHON,
Acting Commissioner of Social Security[1],

Defendant.

MOSMAN, Judge:

**INTRODUCTION**

Plaintiff Dwight Ebarb ("Ebarb"), brings this action pursuant to the Social Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income

---

[1]On January 20, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. She is substituted as defendant in this action pursuant to Fed. R. Civ. P. 25(d)(1) and 20 USC Section 405(g).

and disability insurance benefits. For the reasons set forth below, the decision of the Commissioner is reversed and this case is remanded for the payment of benefits.

## PROCEDURAL BACKGROUND

Ebarb filed an application for benefits on May 17, 2002, alleging disability since September 1, 1999, due to right knee injury, dyslexia, anger, attention-deficit disorder, hallucinations, neck pain and migraine headaches. His application was denied initially and upon reconsideration. On June 3, 2004, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated March 31, 2005, the ALJ found Ebarb was not entitled to benefits. The Appeals Council denied Ebarb's request for review, making the ALJ's decision the final decision of the Commissioner. Ebarb now seeks judicial review of the Commissioner's decision.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert. denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

Step One. The Commissioner determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 CFR §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether claimant has one or more severe impairments. If not, claimant is not disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three. 20 CFR §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations, 20 CFR Part 404, Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or

equal one listed in the regulations, the Commissioner's evaluation of claimant's case proceeds under step four. 20 CFR §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether claimant is able to perform work he or she has done in the past. If so, claimant is not disabled. If claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds under step five. 20 CFR §§ 404.1520(e), 416.920(e).

Step Five. The Commissioner determines whether claimant is able to do any other work. If not, claimant is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled. If the Commissioner does not meet this burden, claimant is disabled. 20 CFR §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id*

## ALJ's DECISION

At step one, the ALJ found Ebarb had not engaged in substantial gainful activity since the alleged onset of disability on September 1, 1999. This finding is not in dispute.

At step two, the ALJ found Ebarb had the medically determinable severe impairments of affective and learning disorders. This finding is in dispute.

At step three, the ALJ found that Ebarb's impairments did not meet or medically equal a listed impairment. This finding is not in dispute.

At step four, the ALJ found that Ebarb was unable to return to his past work as a roofer. This finding is not in dispute.

The ALJ determined that Ebarb retained the residual functional capacity ("RFC") to perform a reduced range of light exertional level work. Kneeling and climbing are limited to an occasional basis, but he is prohibited from crawling, climbing ropes, ladders or scaffolds. The ALJ determined that Ebarb had moderate limitations in his ability to get along with others, but could do so on a casual, everyday basis, with a moderate limitation on public contact. The ALJ found that Ebarb required assistance with setting goals and making independent plans. This finding is in dispute.

At step five, the ALJ determined that Ebarb retained the ability to perform work as a sorter of soft goods or an assembler of printed products. As a result, the ALJ found Ebarb not disabled within the meaning of the Act.

## FACTUAL BACKGROUND

Ebarb was born in 1961, and was 44 years old at the time of the hearing decision. Tr. 63.[2] He has an eleventh grade education, all of which was in special education, and has worked as a roofer, fast-food worker, and housekeeper. Tr. 398-99, 445-47.

The medical records in this case accurately set out Ebarb's medical history as it relates to his claim for benefits. The court has carefully reviewed the extensive medical record, and the

---

[2] Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Ebarb contends that the ALJ erred by: (1) improperly rejecting his testimony; (2) improperly rejecting the opinion of the treating physician; (3) improperly rejecting the opinion of the examining psychologists, and (4) failing to prove that plaintiff retains the ability to perform 'other work' in the national economy. Because the first two issues are dispositive, the court need not address the latter two issues.

### I. The ALJ Failed to Articulate Clear and Convincing Reasons to Reject Ebarb's Testimony

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F3d at 724. *See also Holohan v. Massinari,* 246 F3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722; *see also Holohan,* 246 F3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms [footnote omitted.] *Smolen v. Chater,* 80 F3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A)(1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (l) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom. *Smolen*, 80 F.3d at 1282 (italics in original).

There is objective medical evidence that Ebarb suffers from a learning disorder, hallucinations, a bulging disc in his neck, and a possibly torn meniscus. These impairments could reasonably be expected to cause some pain and impaired concentration. Therefore, the ALJ may not simply reject Ebarb's symptom testimony. To determine whether Ebarb's testimony is credible the ALJ may consider, for example: (l) ordinary techniques of credibility evaluation, such as a reputation for lying or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen,* 80 F3d at 1284.

The ALJ accurately summarized Ebarb's hearing testimony:

/ / /

/ / /

> At the hearing, the claimant testified that he had attended school through the 11th grade in a special education program. He was unable to write letters and could read only very short words; he needed assistance with filing out forms and so forth. He had quit his last job because he did not get along with co-workers, and he had the same problems at other jobs. He was unable to work because he heard and saw "things" that told him to "do bad things." He had some benefit from medication but "Zeus" and "David" talked to him 5-6 times a week; the god Zeus had begun talking to him over the last few months. The claimant indicated that he managed his personal activities, more or less; he spent his time rather aimlessly walking about, and avoided social contact. He had poor recollection of things. He alluded to a potential for violence, and stated that he avoided people on that account as well; he had recently beat someone severely. These episodes were triggered by even minor events or perceptions.
>
> . . .
>
> Here, the claimant's statements concerning his impairments and limitations are not entirely credible in light of information contained in the medical reports and other evidence of record.

Tr. 16-17.

The ALJ contends that he concurred with Ebarb's treating psychiatrist, Robert Vandiver, M.D., in finding Ebarb only partially credible, citing Vandiver's March 2004 chart notes. Those notes provide:

> S: Dwight says that the "Paxil" is making him feel kind of weird. I try to get him to specify exactly what he means by this or give me a better descriptor for it and he cannot. After a while he eventually suggests that the Paxil is 60 mg. and it is a blue and white capsule. He is describing Geodon....He says that he has been rather irritable at home and he says that he tends to yell sometimes when he is angry. I ask him what he is yelling about and as it turns out he is yelling at a voice that he is hearing that is telling him that he is no good.

/ / /

> O: Somewhat difficult as a historian: this has happened before where he leads me to believe one thing is going on when it turns out to be something else entirely. In the past, for example, he would tell me that he did not have any medicine, when in fact he was on PAP programs. Now he is telling me that it is the Paxil causing him to feel strange when in fact it is the Geodon.

Tr. 355. Contrary to the ALJ's assertion, Vandiver does not find that Ebarb lacks credibility. Vandiver simply notes that Ebarb suffers from confusion and an inability to articulate clearly his feelings or empirical data. This is consistent with the evidence from other examiners that Ebarb has borderline intellectual functioning, severe learning disabilities, limited insight, and auditory hallucinations. Tr. 322-23; 201-05; 216; 290-95. Paul Stolzfus, Psy. D. specifically found that Ebarb made a "good effort" on psychological testing. Tr. 203. Carol Greenought, Ph.D., conducted a Comprehensive Psychological Evaluation and noted that it was "clear that he wanted to do the best possible," and that he was a "clear and honest historian," though his "word finding ability was not good, and he responded very concretely." Tr. 290-92. There is no evidence that Ebarb's testimony as to his mental limitations, paranoia, auditory hallucinations, and social limitations was not credible.

II. <u>The ALJ Failed to Articulate Clear and Convincing Reasons to Reject the Opinion of the Treating Physician</u>

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan v. Massanari,* 246 F3d 1195, 1202 (9th Cir 2001); 20 CFR § 404.1527(d)(2). An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing" reasons supported by substantial evidence in

the record. *Id.* at 1202, citing *Reddick v. Chater,* 157 F3d 715, 725 (9th Cir 1998). If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, treating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 CFR 404.1527. *Id.*

Dr. Vandiver identified severe mental limitations that the ALJ found to be consistent with disability. Tr. 19, 282-85. Dr. Vandiver found that Ebarb was severely limited in his ability to accept instruction, respond appropriately to criticism, and complete a normal workday. *Id.*

The ALJ stated:

> That assessment is consistent with disability. However, Dr. Vandiver apparently relied to a great extent on the claimant's subjective statements, despite the fact that he was aware of the claimant's penchant for being untruthful (exhibit 16F:6). The claimant's persistent fabrications and Dr. Vandiver's reliance on them makes his assessment unreliable in turn. In April 2004 the claimant discussed his delusional communications from "Zeus" and a "demon," episodes that he also described at the hearing. Dr. Vandiver concluded that these episodes were a "mood congruent hallucination" (exhibit 16F:3). But in February 2004 Dr. Vandiver opined that the claimant's behavior appeared to be a caricature of William Shatner (exhibit 16F:8). All together, these observations suggest that, at times, the claimant may be imitating a television and movie persona in order to appear ill.

Tr. 19.

The first exhibit cited by the ALJ, 16F:6, is Dr. Vandiver's March 2004 chart discussed above. Contrary to the ALJ's assertion, Dr. Vandiver does not find that Ebarb is untruthful. Moreover, the record shows that Dr. Vandiver noted objective signs of mental illness, including a blunted affect and inability to understand complicated instructions. Tr. 273. Dr. Vandiver noticed a decreased ability to concentrate or follow conversations, and disjointed and labile

speech. Tr. 268, 377. Dr. Vandiver's assessment is not based solely on Ebarb's subjective complaints.

Exhibit 16F:8 is Dr. Vandiver's February 2004 chart note, in which he states:

> O: Calmer than I have seen him in the past, less "jagged" if I could say that in terms of the way he comes across. There is no really good clinical way to describe this that I am aware of, but one way that I could say that he has behaved in the past is something like a caricature of William Shatner: A tendency towards jagged constructions in his way of speaking. Today he is calmer, less jagged.

Tr. 357.

Dr. Vandiver does not suggest that Ebarb is attempting to imitate an actor in order to appear ill. Rather, Dr. Vandiver is employing a simile by attempting to describe Ebarb's unusual speech pattern as similar to a well-known actor. In January 2004 Vandiver describes Ebarb as having a "peculiar style of starting and stopping in his speech that is rather angular and non-contiguous." Tr. 358. In February 2004 Vandiver described "rapid clipped speech." Tr. 268. In March 2004 Vandiver noted "very profound difficulty concentrating and staying on task. His speech is more angular than ever." Tr. 353. There is no evidence that Ebarb was attempting to act or behave in a way to manipulate the diagnoses of examiners. To the contrary, his intellectual limitations, severe learning disabilities, limited insight, and concrete thinking abilities would make such an on-going imitation highly unlikely.

The ALJ found that Dr. Vandiver's examinations were for the purpose of medication management and not for counseling treatment, and that Vandiver's assessment was "vague and lacking in specificity." Tr. 19. However, as noted above, Dr. Vandiver routinely identified objective findings regarding mental health signs and symptoms. The Mental Residual Functional

Capacity form he completed enumerated over 20 specific mental health issues. Tr. 284-87. Dr. Vandiver specifically found that Ebarb had "a great potential for dangerousness. This is because he is so angry much of the time and he has so little insight over what is going on." Tr. 360. Dr. Vandiver's assessment was quite specific, contrary to the ALJ's assertion.

Finally, the ALJ stated that, although Ebarb claimed that his mental symptoms had been present for years, he was able to work as a roofer. Tr. 19. However, the ALJ also found that Ebarb was not able to return to his past work, and there is evidence that Ebarb's mental condition had deteriorated over time. Tr. 293.

The ALJ failed to give clear and convincing reasons to reject Dr. Vandiver's opinions as to Ebarb's limitations. There is no evidence to support the ALJ's conclusion that Ebarb was attempting to imitate an actor in order to appear ill, nor is it clear how such an attempt would effect Ebarb's attempt to obtain benefits. The ALJ agreed that the limitations identified by Dr. Vandiver preclude all competitive employment. Tr. 19.

III. Remand For Payment of Benefits is Appropriate

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F3d 1172, 1178 (9th Cir), *cert. denied,* 531 US 1038 (2000). The court's decision turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F2d 759, 763 (9th Cir 1989).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel,* 211 F3d at 1178. The court should grant an immediate award of benefits when:

> (l) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*

The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See id.* at 1178 n.2.

The court has determined that the ALJ improperly rejected Dr. Vandiver's opinion as to Ebarb's limitations. The ALJ acknowledged that a person with the described limitations would be unable to sustain employment. Tr. 19. If credited, Dr. Vandiver 's opinion establishes that Ebarb cannot work on a regular and sustained full-time basis and, therefore, he is disabled. The court, therefore concludes this matter should not be remanded for further proceedings. *See Schneider v. Comm'r,* 223 F3d 968 (9th Cir 2000). *See also Reddick v. Chater,* 157 F3d 715, 729 (9th Cir 1998) ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.")

/ / /

/ / /

/ / /

/ / /

Accordingly, the court remands this matter for the purpose of permitting the Commissioner to calculate and to award benefits.

CONCLUSION

For these reasons, the court REVERSES the decision of the Commissioner and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

IT IS SO ORDERED.

Dated this 28th day of February, 2007.

MICHAEL MOSMAN
United States District Judge